Okay, well now here I am in 2008, 1068 Sundance v. Demonte Fabricating. Mr. Rainey. Good morning, your honors, and may it please the court. The jury in this case found that the only asserted claim to a segmented retractable tarp for a truck cover was invalid for obviousness. I submit that verdict is amply supported both by documentary evidence in the form of a number of prior art patents, as well as testimony from witnesses, including Demonte's expert witness, both on direct and on cross-examination. I further submit this evidence is more... What kind of expert was he, Mr. Rainey? He was a patent lawyer with a mechanical engineering degree, although his testimony encompassed primarily the subject of the scope and content of the prior art. He was not asked to testify in general on patent office practice and procedure. So he was not testifying about legal questions. As a patent law expert, he was testifying on factual questions. That's correct. Is that... I mean, the case you cite in your Yellow Reef to support that is Snellman, or that's the only case that I think is cited for that proposition, and I'm not... I mean, in Snellman it's a plain construction and it's an infringement. It's hard to tell, but is it clear to you that that's permissible under the case law? I mean, a patent law expert testifying on facts, if he's not qualified as an expert or has been recognized as a technical expert? I think the answer is yes, and I have a couple of responses to that. One is testimony came in without objection. So there's no argument here that that testimony should be stricken from the record. That's point one. Point two is this is a fairly low level of technology. The person of ordinary skill in the art is a person with a high school degree and some experience working with tarps. So I'm not certain that a lawyer, simply because he's a lawyer, precludes him from having information relevant to the factual questions, such as what... Well, am I appreciating that argument to be that while the district court didn't explicitly rule him to be a technical expert, he nonetheless accepted his testimony on the technical issues? I mean, it seems to me that the facts are undisputed. The man's got more credentials than the person of ordinary skill in the art in the relevant field. And that's generally what technical experts have. So I guess I kind of had assumed, and maybe you are and I'm not fully appreciating it, I'd assumed that you were going to tell me that he was both a patent and a technical expert in this case. But I think his testimony was more on the technical side than it was on the patent law side. He just happens to have a patent law degree as well. You agree that he shouldn't be testifying as a legal expert to the jury? I mean, the fact of the matter is even technical experts will often offer ultimate conclusions on the question of obviousness. So I'm not sure there's anything improper about him saying that in his opinion, the claim that issue was invalid as obvious. It just strikes me as being questionable as to whether... Forget Bliss's technical expertise here. Suppose he were only offered as a legal expert. Wouldn't that be improper? I mean, this is an issue that gets debated in patent cases. How far can a patent lawyer who's testifying as a patent expert go? And some judges allow the testimony on ultimate issues and some judges do not. I think there's a mixed case law on the issue from the various courts. And this court has accepted that testimony in some cases. But regardless, I think there's also the further point that I'm not even certain under this court's precedent, such as the Union Carbide case, that a technical expert is even necessary in this case, given the level of the technology at issue. The jury was properly charged on the law and was free to make its judgment calls about what the prior art references taught and what they didn't teach. Just by looking at the prior art references themselves, you mean? And listening to the testimony of fact witnesses. Mainly Mr. Bliss, the lawyer we've been talking about. Well, Mr. Damani testified and was asked questions about segmented tarps in the prior art. Mr. Merlot, the patentee, was asked questions on cross-examination indirect about segmentation and the desirability to have it in tarp systems. So the evidence is not solely limited to the prior art. It encompasses more than that. So I would submit that no, it's not just what Mr. Bliss says or doesn't say that supports that. Kind of thin and conclusively, I mean, Mr. Bliss doesn't say a whole lot, but I understood your argument to be principally relying on the statements he made. Yes. I think we do rely on his walking the jury through what the prior art references teach and showing them statements in the prior art references and pointing them to figures and features in the prior art references in terms of walking the jury through what those references show, which I think is fully consistent with what the Supreme Court is talking about in KSR and Graham versus John Deere. So I do think that there was ample evidence before the jury for them to draw the conclusions that they drew in this case and to make the findings on the disputed issues of fact that they made. On the hall reference, if I understand you correctly, you're saying that the claim ought to be construed in such a way that it would include independent removal that disturbed the adjacent panels, right? Our argument is that the claim was construed and it's construed broadly to require only that any one cover system can be removed from the whole system. Even if it disturbs the adjacent panels. Yes. There's nothing about disturbing in the claim construction that was given to the jury in this case. That argument crept in in the re-examination proceedings as we pointed out. Didn't you on reconsideration in the district court argue the opposite in relation to the infringement issue? What we said was that they had changed the construction of independent in the re-examination and that under that construction we don't infringe because if our system... Under that construction which would be, it has to be able to remove it without disturbing. That's correct. But the instruction that was given to the jury in this case and which the jury made its obviousness determination on was the broader construction that requires removal of both systems. And that came prior as I read the file history to the re-exam where they now have sort of changed course and offered a more narrowing construction themselves during prosecution of the re-exam. I think it's maybe the second re-exam. Is that right? That's correct. So the jury verdict came first in validating it based on the district court's claim construction which was not disputed at the time. Is that correct? That's correct. And in fact the construction we're relying on was... Proffered by... Yeah. So I think for purposes of the obviousness verdict, that's the landscape we have. And I don't think it would be appropriate to change the landscape now. We're standing here. And I think it's pretty clear that the hall reference, even if you accept their view of what it teaches in terms of how you remove the segments in the hall reference, that you can remove a segment without removing the adjacent segments from the system. There may be some disturbing of them, but they can be removed. I would add that there's an alternative teaching in hall of attaching the segments along the sides of the bows. And in addition, Mr. Bliss testified that as he read the hall reference, this is a testimony that was elicited in cross-exam, as he read the hall reference, you could slide the tarp out given the way that the bows there created slots for the tarp to sit in. So it was his view that even under a narrower construction, you can still get the tarp out of hall without disturbing the adjacent tarps. Counsel, post-KSR, what do you appreciate the test to be now for motivation to combine lack thereof? What do you think the test is? This opinion was pre-KSR. You asked Judge Cohen to reconsider and he said, done, no, out. It was a very thorough reconsideration on his part. Exactly, Your Honor. I think that KSR gives you a series of factual settings that you can look at, all of which can provide that explanation as to why something would have been obvious or was not obvious. And I think motivation to combine teaching suggestion is one option. Now, the jury here was charged it had to find it and it did. So I think that's highly relevant and I think it's hotly disputed between the parties as to whether on that factual issue. But I think KSR offers other options, which I think are also applicable here, such as suggesting that you can look outside the field of endeavor of the inventor for solutions people have put into place in other situations to see whether that solution could also be applied here. I think KSR also talks about, you know, if all you're doing is combining known techniques or known methods in a predictable way, that's another way you can arrive at the conclusion that it would have been obvious. So is that your take on what happened here with respect to the district court, Judge, is that the predicate was that he misconstrued the truck environment, the analogous art question, and therefore he focused almost too much or exclusively on the motivation to combine looking for an explicit motivation? I think that's clear from his opinion, granting JMOL in this case, that he simply disregarded Hall. He misread Hall. And he misread Hall as being limited only to the truck environment? No, that it was a non-truck. I mean, there was non-truck environment? Yes. And therefore, a person of ordinary skill in the art at the time of the invention would not have been motivated to combine the segmented tarp of Hall with the Cromero reference, for example, which is clearly a tarp for a truck. And it has every limitation it claims except segmentation. So I do think that's pretty clear from his order. And the issue of- How was this argued to the jury in terms of motivation to combine? It was argued- By counsel? By counsel. Basically, the argument went something like this. Cromero has all the elements except segmented tarps, and we showed you tons of prior art references teaching segment- adding segmentation to a tarp system and pointing out the desirable benefits of a tarp system. That's the essence of the argument. Was there was the reference in the closing argument specifically to Hall and to Foulkes? There was a reference specifically to Hall and Foulkes was referenced generally as the- It's not actually in the appendix that you have, but in the full closing argument, you will see counsel points out that in name, Hall, but in substance, other prior art references that were before him, including Foulkes, I would submit. Foulkes is a swimming pool cover. He points out awnings and swimming pool covers and the like because there was a lot of testimony presented to the jury about how segmentation in covers generally was widely known. So I'd be glad- The argument on the other side as to why you wouldn't combine with Hall? The argument on the other side was a technical argument that involved- that focused on the situation of sort of a high-speed environment that trucks operate in and the durability issues and that because of those, one would not be I think that to me, that's a classic factual kind of question, which the jury resolved against Merleau and in our favor. There's an argument that was made about secondary considerations. I would submit that there's some confusion about whether this issue was even permissibly argued to the jury. It's our understanding, I was not trial counsel, but it's our understanding that during the charge conference, the judge took that out of the pattern instructions. And if you look at the instructions, you'll see it's missing from the detailed portion of those instructions. But regardless, the only two arguments of secondary considerations that are made are copying and long felt need. And there was ample evidence on the other side of those issues from which a jury could have concluded there was no copying of the claimed invention and there was no long felt need for segmentation in truck tarps. So I would submit that there was more than sufficient evidence to support that. But you argued at the charge conference that secondary consideration shouldn't be charged to the jury? Because of a failure of proof. That is my understanding. Again, I was not there. The judge, Judge Cone, considered it in the post-trial briefing. And then what was the position of the other side as to whether secondary consideration should be charged to the jury? Well, they're taking the position that the jury was charged on it given the Graham v. John Deere quote that's in the jury instructions. But I don't know the answer to your question precisely, other than I assume they believe it was properly before the jury because that's what they've argued. But even if the jury was charged with it, the jury still found the patent invalid at the end of the day. That's exactly right, Your Honor. And so to me, our position is that there was more than sufficient evidence to support the verdict of obviousness. I see I'm into my rebuttal time. I'd like to save what I have left. We'll give you three minutes. Thank you, Your Honor. Mr. Weddick, am I pronouncing that correctly? Weddick. Weddick, okay. Our position is quite simply that there were no facts provided to the jury regarding the catalog of parts or components that the expert witness Bliss provided the jury. If you go through all the testimony, Judge Cohn picked up on the point that the only evidence that was submitted was his opinion, Bliss's opinion, that the Hall reference could be combined with Camaro and Camaro alternatively could be combined with Hall. That was his sum total of his expertise in how do you put all of these components to make the invention. But it was argued by the opposing counsel as to whether Hall should be combined with Camaro to create obviousness, right? You're talking about... Closing argument to the jury. I don't remember. I don't remember. But Hall, if you look at Hall, the segmentation and the argument of independently being removed, that the segment being removed is removed independently of the other segments, it doesn't say it's sort of morphed into the discussion this morning that the other segments have to come out. Only an edge comes out. It's no longer a segment in the tarp. The claim only requires independently removal. What do you understand that to mean? That means that you can take one tarp out, one segment, without any edge or any part of the other tarps being removed. Removed or disturbed? Disturbed came in by the patent examiner. It's a term that we responded to in the final re-exam. It was never raised by us. He looked at it as disturbed. That's the patent examiner in the second re-examination. Do you think that's the correct construction or not? It's not the construction that we agreed with the court on. Okay. The construction of the court is the one that we're arguing. It's independently removable. The segment is independently removable. In Hall, you have to remove the section 85, I believe is the number, or 84, 89, whatever it is. Both sides come out. The one you want to remove and the one you don't want to remove. It's a face plate, right? It's a face plate. The segments don't actually come off when you remove the face plate. The edge comes off. You have to move two of them to remove one. The ones on the other side fall off. They drop down in. They're no longer part of the roof. They come out. They both come out. If you look at figure six, they- Your view is that the correct claim construction doesn't cover a situation in which the adjacent panels are taken off the track, even if they are not completely removed. That's correct because that's precisely what the invention provides. But isn't that inconsistent with the claim construction that the district court- No, it is the claim construction. And that you didn't object to it. How do I- You say that is the claim construction? I believe that is the claim construction. Where does- How do I know that? Where does he say that's the claim construction? I'd have to pull the claim construction out, but that's what it says. Independently removable. The segment you're removing is independently removable. That's what it says. Is there anything else that he said that supports your claim construction? That's what the parties argued. Nobody argued otherwise. This came in in briefing where now it's independently removable means the adjacent one has to come out too. This is independently removable is the one that we're removing. It comes out independent of the other side on either end or at the end. Counsel, the construction the district court proffered was any one cover section can be removed. I assume you would agree that means taken off? Yes. Any one cover section can be removed from the cover system without removing any other cover section. I guess I'm struggling to appreciate the distinction that you're drawing here, but if I read that as any one cover section that can be taken off from the cover without taking off any other cover sections and she has to- Or removing it. Okay. Well, I asked you what you understood the word removed to mean and you said take off. Take one section out without removing the others. Right. And that's what we do. I guess I don't appreciate in Hall why it is that you're saying that one segment has to be taken off in order to remove the other section. The edge comes out. Whether you want it to come out or not, it comes out because you have to drop the panel to release the section you want to remove. Okay. Now you're saying if I'm appreciating, I want to make sure I understand your technical argument about the disclosure in Hall. Figure six, faceplate 89, when you pull that off, are you saying that by disturbing or moving or something, the adjacent panel 92, when you want to remove, in fact, 93, that particular portion of the segmented cover, that that is effectively removing it? Yes, it comes out. Both of those come out when you drop the panel down. It comes out. I guess I'm thinking removing is picking the thing up and taking it off, obviously. Well, it drops out. These are large structures. So when you take the panel off, both edges that are contained by 89 fall out. There's no way to keep it up there. They come out. And when you take the other one off to remove the one you want to remove, both of those edges come out as well. So you have two panels that are draped, hanging there, and one you've removed. So they're not independent. I haven't removed it independently of the others. OK. The two panels that are hanging there, though, haven't been removed. They're removed as a cover. You cannot collapse it and bring it together. They're draped inside. They're not removed from the other side. That's correct. But they're not part of the roof anymore. They're not part of the system. Explain. The claim construction that you just agreed with Judge Moron says without removing any other cover section. So how are we to not remove it? Well, that cover section is no longer part of the cover. If you collapse that, if you take the one out in the invention, the one, and you bring them together, they can collapse together, you have a complete roof. On the other hand, if you do it in the hall, you have the draping segments no longer part of the roof section. So what happens in figure one of hall? What drape? Do you have figure one of ball? I think figure one shows. You take out 91. Bill, there's no 91 in figure 72, right? Cover section 72. OK. Take out. If you take out 72. OK, then what? Then the ones on either side of it drop down into the system. They come out. They're not in the roof segment anymore. They're not in the roof segment, you mean they come off entirely? They don't come off entirely. They're still hung on the other, on 61 and 64. Tell me where in the hall reference it says that's what happens when you take off 71 or 72. It doesn't. OK, now let me ask you this. On each side of figure one, there is, on each side, there is a face plate akin to what's shown in figure six, correct? On each side, right? Holding down each side and connecting each side together. It's not just one face plate, there's one on either side. In figure one. It's not shown in figure one, but I'm suggesting to you that figure six. Yes. That face plate, which holds these two parts together, would be present on each side of this large structure, holding the two tarps together, one on each side. There'd be one on each of 61, 62, 63, 64, 65. Now there couldn't just be one on each side, right? There'd have to be one on the other side too that's not shown. There's one on the bottom, they're on the bottom. Face plate is on the bottom, 89. You pull it down to remove it. Where is it disclosed, let's go back to my question in the Hall reference, that that's what happens when you remove the face plate, that this other thing falls down entirely, no longer functions as part of the cover? It doesn't say anything in Hall. So isn't it possible that since this is a question of fact, and the jury rejected the notion that that other cover falls down and fails to operate that way, since Hall doesn't speak to it? Well, I think the testimony at trial, that was the only testimony that came out as to how that operated. Whose testimony was that? It was our testimony, our expert. Who was? And I think on cross-examination of Mr. Bliss, you will see that he could not contrive a way to pull that out without both of them coming out. Well, there may be a disturbance there, but the question is whether that's an independent removal of the panel or not. We're talking about independently removing one of those panels, and it's not independent if the other halves of the adjacent panels drop out of the system. That's not independent. Drop out of the system to you means don't function as a cover. They're not part of the cover. Even though they're still there on the truck. They may be still there on the truck, but they're still not part of the cover. They can be there on the truck, but in your view, they're removed once they no longer function as a cover. That's correct. But why then does the Hall reference disclose, for example, at column one, line 54, this forward and backward while being maintained in an aligned and vertical position? It says each of these frames is maintained in a vertical relationship and adapted to be moved independently forward and backward. Right. You're just pushing them back. That's what all these cables do. That's why this system is very difficult to interpose on Camaro or Camaro on it. All of the cabling are members that hold the support beams up. There's no drive assembly. You have to push them one at a time. You can push them and the covers will pull the remainders back. So you're saying that doesn't address the removability question? No. Can you point us where in the record your expert said that the Hall supports your position? I can't offhand, Your Honor. I don't have it offhand. The other thing I wanted to address was the interest. We had objected to the court denying interest from the date of infringement. And he said it was unreasonable, but there was no basis for his saying it was unreasonable, particularly after he found that there were no latches in the case and that the defendant willfully infringed. We think we should be entitled to interest from the date of the infringement. And that's pretty much our argument. Any other questions? Thank you very much. Counsel, will you focus on responding vis-a-vis the Hall reference and the notion of what the testimony was about what Hall taught in terms of independent removal versus disturbing and all of that? Sure. I think accepting their position about Hall, they say you pop the faceplate off of one of the bows and both of the edges of the segments that are coming in are somehow going to pop out of that. And then they'll be dangling in some way, shape, or form. So to get a cover section out of Hall, again, using their view about what Hall teaches, you have to go over to the other bow, adjacent bow, pop the cover off, and then you'll be able to remove the segment that sits in between. The other two segments, while their edges may be disturbed, are still in the system because they're attached at the farther end bows, if you will, looking at figure one of Hall, for example. Yeah, but I think the difference between you is they're saying that removable means it no longer functions as a cover. And you say removable means it's taken away and put somewhere else off the truck bed. I'm just following the claim construction that the judge gave. But is my description accurate? I think that is their argument. And your argument is it has to be taken completely off the truck bed. Well, the way this would work in reality is, and I don't think this is any great leap, is if you have a broken cover, a torn cover that you want to replace, you will stop the truck, you will take it to the repair shop, they will pop off the cover, pull out the broken tarp section, and put a new tarp section back in. Is my description of your position accurate? That Hall doesn't show removal because the segment's not taken entirely off the truck? That's their position. Your position is that it's removed when? Our position is that's sufficient, one. Two, that our expert, Bliss, testified at page A4323 of the record, that in fact you didn't have to pop the cover plate off of figure six in Hall in order to get the covers out. You could actually slide a cover out of the system. And so there's a second way that Hall teaches people of ordinary skill in the art how to do this. I would further add that there were other prior art references before the jury, such as Faulks, that showed removal as well using methods that would not result in this draping of the adjacent panels. So I think this is an interesting factual argument, but it was rejected by the jury. And there's other evidence upon which a reasonable jury could have found in my client's favor on this issue. And you asked Judge Dyke about the closing argument. I have it right here in front of me. This is not in the appendix as we submitted it. But our trial counsel for my client clearly points explicitly to Hall and Cromero. And then he points to, he says, we talked about swimming pool covers. That's Faulks. We talked about awnings. That was another prior art reference that was around. And then he basically makes the argument that it's not a great leap to take Cromero and combine it with these segmented tarp structures to arrive at the claim of invention. And this claim is not claiming a particularly specific type of a bow structure. In fact, they fought hard against a claim construction that would have narrowed it to a specific kind of bow structure. Because the bow structure that we use is nearly exact. It's functionally identical to the bow structure you see in the Faulks reference, where you've got the two edges of the tarp coming into a slot on the bow. I think any further questions? I think we're out of time. Thank you.